UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
GENERAL NUTRITION INVESTMENT
COMPANY and GENERAL NUTRITION
CENTERS, INC.,

                                Plaintiffs,                  REPORT AND
                                                                 RECOMMENDATION
   -against-
                                                                 10-CV-2763 (NGG)(RML)

GENERAL VITAMIN CENTERS, INC.,
and NAYMA CHEEMA,

                                Defendants.
-------------------------------------------------------X

LEVY, United States Magistrate Judge:

        By order dated June 2, 2011, the Honorable Nicholas G. Garaufis, United States District Judge, referred plaintiffs' motion for entry of a default judgment to me to conduct an inquest and issue a report and recommendation. For the reasons stated below, I respectfully recommend that plaintiffs' motion be granted in part and denied in part. As to the portions of plaintiff's motion that should be granted, I recommend that plaintiff be awarded a total of $9,740.04.

## BACKGROUND AND FACTS

        Plaintiffs General Nutrition Investment Company ("GNIC") and General Nutrition Centers, Inc. ("GNC") (collectively, "plaintiffs"), commenced this action in June 2010. They assert claims against defendants General Vitamin Centers, Inc. ("GVC"), and Nayma Cheema (collectively, "defendants") for trademark infringement, trademark counterfeiting, unfair competition, federal trademark dilution under federal law, unfair competition and dilution and injury to business reputation under New York law. (See Complaint, dated June 16, 2010

("Compl."), ¶¶ 35-60.) After defendants failed to appear or answer in this action, plaintiffs moved for a default judgment and Judge Garaufis referred the motion to me. (See Order, dated June 2, 2011.) By order dated June 6, 2011, I directed plaintiffs to serve and file a submission in support of its claims for damages and attorney's fees, and I directed defendant to serve and file any opposition on or before July 8, 2011. (See Order, dated June 6, 2011.) To date, the court has received no communication from defendants.

Affidavits of Service indicate that defendants Nayma Cheema and General Vitamin Centers, Inc. were served with the summons and complaint on June 23, 2010 and June 24, 2010, respectively. (See Affidavit of Nelson Carvajal, sworn to June 25, 2010; Affidavit of Deborah LaPointe, sworn to June 24, 2010.) On March 7, 2011, the Clerk of the Court noted defendants' default. (See Clerk's Notation of Default, dated Mar. 7, 2011.) Having reviewed the papers plaintiffs submitted in support of their application, I respectfully recommend that plaintiffs' request for a default judgment be granted.

It is well-settled that a defaulting defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Plaintiffs' allegations are as follows:

Plaintiff GNC is the largest global specialty retailer of nutritional products. (Compl. ¶ 9.) GNIC is GNC's wholly-owned indirect intellectual property holding subsidiary and has established a portfolio of famous trademarks which are used under license by GNC and its affiliates, franchisees, and licensees in the conduct of GNC's business. (Id. ¶ 10.)

GNIC owns a federal trademark registration for the mark "GNC" (the "GNC

Mark") on the Principal Register of the Department of Commerce, Patent and Trademark Office ("USPTO"), Registration No. 2,180,647, which was issued on August 11, 1998. (Id. ¶ 12; Ex. 1.) The GNC Mark is also protected by valid USPTO Registration No. 3,429,065. (Id. ¶ 13; Ex. 2.) In addition, GNIC also owns registrations for the GNC Mark in over seventy-six countries worldwide. (Id. ¶ 14.) GNIC also owns the mark "GNC GENERAL NUTRITION CENTERS," as used as a service mark in connection with retail stores specializing in food processing and featuring the sale of health foods, supplements, vitamins and minerals, fitness products and apparel, cosmetics, oral and body care, diagnostic exercise, and calorie control products. (Id. ¶ 15; Ex. 3.) It is protected by valid USPTO Registration No. 1,786,007. (Id. ¶ 16; Ex. 3.) GNIC also owns registrations for the GNC GENERAL NUTRITION CENTERS Mark in over eighty-five countries worldwide. (Id. ¶ 18.) Since "at least as early as 1964," GNC has used the mark "GNC" and since "at least as early as 1990" GNC has used the mark "GNC GENERAL NUTRITION CENTERS" (the "Marks") in connection with the sale of dietary supplements, and as a service mark for retail store services featuring health care and fitness products, and has invested substantial time, effort and money in developing, preparing, advertising, and promoting the Marks. (Id. ¶¶ 9, 11, 18, 19.)

Defendant GVC is a New York corporation with its principal place of business in Astoria, New York. (Id. ¶ 3.) Defendant Cheema is an individual who, upon information and belief, operates GVC. (Id. ¶ 4.) Plaintiffs allege that, without their authorization or consent, Cheema is using the marks "GVC" and "General Vitamin Center" in connection with a store at 25-12 Steinway Street in Astoria, New York, which purports to specialize in the sale of vitamins. (Id. ¶¶ 23, 24; Ex. 4.) Upon learning of this use, plaintiffs' counsel advised Cheema that

plaintiffs regarded defendants' use of GVC as infringing plaintiffs' Marks. By letter dated May 14, 2010, plaintiffs' counsel stated that defendants' use of "GVC GENERAL VITAMIN CENTER" was likely to cause confusion among consumers or deceive as to the origin, sponsorship or approval of any goods or services purveyed by GVC, and was likely to cause consumers to believe that GVC is associated or affiliated with GNC. (See id. ¶ 31; Ex. 6.) Plaintiffs demanded that defendants cease use of "GVC GENERAL VITAMIN CENTER" or any similar mark, including the previous use of "General Mineral Centers." (Id.) It also demanded that GVC change the corporate name of the company. (Id.) Neither plaintiffs nor their counsel received any response to this letter. (Id. ¶ 32.)

Plaintiffs assert claims against defendants for trademark infringement, trademark counterfeiting, unfair competition, and trademark dilution. (Id. ¶ 35-60.) They seek a permanent injunction, attorney's fees and costs. (See Memorandum of Law in Support of Plaintiffs' Default Judgment, dated Mar. 10, 2010 ("Pls.' Mem.") ¶ 10.)

**DISCUSSION**

A. Permanent Injunction

Plaintiffs first seek a permanent injunction against defendants' use of GENERAL VITAMIN CENTERS and other GNC Marks. A party seeking to obtain an injunction must establish that it will suffer irreparable harm in the absence of an injunction and demonstrate either (1) a likelihood of success on the merits or (2) serious questions going to the merits to make them a fair ground for litigation, with a balance of the hardships tipping decidedly in the plaintiff's favor. Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 113-14 (2d Cir. 2006) (citing Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir.

1979)).

It is axiomatic that trademark laws are designed to protect the public from confusion over the source of goods or services. Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 107-08 (2d Cir. 2000). As the Second Circuit has explained, a trademark:

> epitomizes the goodwill of a business. This creation and perpetuation of goodwill depends on customer recognition. The nature of goodwill is dictated by the consumer's desire to do business with the same seller. The buyer expects the same experience with each purchase – this is the reason d'etre [sic] for the sale.

Power Test Petroleum Distributors v. Calcu Gas, Inc., 754 F.2d 91, 97 (2d Cir. 1985). Thus, in trademark cases, "'a showing of likelihood of confusion as to source or sponsorship establishes the requisite likelihood of success on the merits as well as risk of irreparable harm.'" Am. Cyanamid v. Campagna per le Farmacie in Italia, S.P.A., 847 F.2d 53, 55 (2d Cir. 1988) (quoting Home Box Office, Inc. v. Showtime/The Movie Channel Inc., 832 F.2d 1311, 1314 (2d Cir. 1987)); see also Brennan's, Inc. v. Bennan's Rest., LLC., 360 F.3d 125, 129 (2d Cir. 2004) ("[P]roof of a likelihood of confusion establishes both likelihood of success on the merits and irreparable harm."). To meet this burden, plaintiffs need "only to raise a serious question of likelihood of confusion." Am. Cyanamid, 847 F.2d at 55 (citing LeSportsac, Inc. v. K Mart Corp., 754 F.2d 71, 79 (2d Cir. 1985)).

To determine the likelihood of confusion, courts generally consider a number of non-exclusive factors, including: (1) the strength of the mark; (2) the similarity between the two marks; (3) the proximity of products in the marketplace; (4) evidence of actual confusion; (5) defendant's bad faith; (6) the quality of defendant's product or service; and (7) the sophistication

of the relevant consumer group. See Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 115 (2d Cir. 2009) (citing Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961)). The strength of a mark is measured by "its tendency to identify the goods [or services] sold under the mark as emanating from a particular . . . source." Sports Auth., Inc. v. Prime Hospitality Corp., 89 F.3d 955, 960 (2d Cir. 1996) (quoting McGregor-Doniger, Inc. v. Drizzle, Inc., 599 F.2d 1126, 1131 (2d Cir. 1979), sub nom, Paddington Corp. v. Attiki Imps. & Distribs., Inc., 996 F.2d 577 (2d Cir. 1993)). The "proximity-of-the-products" element addresses whether and to what extent the two products compete with each other. See Brennan's, Inc., 360 F.3d at 134 (citing Cadbury Beverages, Inc. v. Cott Corp., 73 F.3d 474, 480 (2d Cir. 1996)). The "similarity of marks" element addresses the overall impression created by each mark compared to the other, followed by the question of whether the similarity of the overall impression of the mark is more likely than not to cause consumer confusion. See Brennan's, Inc., 360 F.3d at 133 (citing Gruner Jahr USA Pub., a Div. of Gruner Jahr Printing & Pub. Co. v. Meredith Corp., 991 F.2d 1072, 1078 (2d Cir. 1993)).

Here, the products sold by GNC and GVC are nearly identical and compete in the same market both companies sell vitamins and nutritional supplements. The photographs of each of the storefronts indicate that the signs are strikingly similar. (See Compl. Exs. 4, 5.) Both of the signs have the initials in block lettering placed over an oval containing the long form name of the store. (Id.) The names GNC GENERAL NUTRITION CENTER and GVC GENERAL VITAMIN CENTER are clearly prone to confusion in this context. In sum, these circumstances raise a serious question of likelihood of confusion.

To obtain a permanent injunction (as opposed to a preliminary injunction), a

plaintiff must also succeed on the merits and demonstrate irreparable harm.  See Century 21 Real Estate LLC v. Bercosa Corp., 666 F. Supp. 2d 274, 295 (E.D.N.Y. 2009) (citing Roach v. Morse, 440 F.3d 53, 56 (2d Cir. 2006)).  In trademark cases, irreparable injury is established where "there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused . . . ."  Century 21 Real Estate LLC, 666 F. Supp. 2d at 295 (quoting Lobo Enter., Inc. v. Tunnel, Inc., 822 F.2d 331, 333 (2d Cir. 1987)).  As explained, defendants' default constitutes an admission of liability; therefore, plaintiffs have achieved actual success on the merits.  See, e.g., DCH Auto Group (USA) Inc. v. Fit You Best Auto., Inc., No. CV-05-2973, 2006 WL 279055, at *9 (E.D.N.Y. Jan. 10, 2006).  The record establishes that without an injunction the defendants will continue to infringe on the GNC Marks.  The defendants failed to respond to plaintiffs' letter or phone calls demanding they cease use of the GNC Marks, and the infringing activity has continued unabated.  (Compl. ¶ 32.)

Accordingly, plaintiffs have met their burden of showing actual success on the merits and irreparable harm.  I therefore respectfully recommend that plaintiffs' request for a permanent injunction be granted and that defendants be permanently enjoined from using the marks "GVC" and "GENERAL VITAMIN CENTER" in connection with the promotion or sale of vitamins and health supplements.

### B.  Attorney's Fees and Costs

Plaintiffs also request $11,577.85 in attorney's fees under the Lanham Act.  Section 35(a) of the Lanham Act permits the court to award reasonable attorney's fees to the prevailing party in "exceptional cases."  See 15 U.S.C. § 1117(a).  In the Second Circuit, exceptional cases warranting the award of reasonable attorney's fees are limited to those

evidencing fraud, bad faith, or willful infringement.  See Gordon and Breach Sci. Publishers S.A. v. American Inst. of Physics, 166 F.3d 438, 439 (2d Cir. 1999) (citing Twin Peaks Prods, Inc. v. Publications Int'l, Ltd., 996 F.2d 1366, 1383 (2d Cir. 1993)); see also Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849 (2d Cir. 1995) ("'exceptional' circumstances include willful infringement").  Even with a finding of bad faith, the decision to award attorney's fees remains within the sound discretion of the district court.  See Prot. One Alarm Monitoring, Inc. v. Executive Prot. One Sec. Serv., LLC., 553 F. Supp. 2d 201, 208 (E.D.N.Y. 2008).

In the complaint, plaintiffs allege that defendants' use of the GVC GENERAL VITAMIN CENTER mark was willful and intentional.  (See Compl. ¶ 33.)  In a default, the factual allegations set forth in the complaint are deemed true (see Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)) and "[a] defaulting party ordinarily cannot contest the merits of the plaintiff's claim absent 'indisputable' contradictory evidence."  Cheesecake Factory Assets Co. LLC v. Philadelphia Cheese Steak Factory Inc., 05 CV 3243, 2008 WL 2510601, at * 3 (E.D.N.Y. June 20, 2008) (citing In re Crazy Eddie Sec. Litig., 948 F. Supp. 1154, 1160 (E.D.N.Y. 1996).  Defendants have failed to file an answer or otherwise submit any evidence to contradict the allegations set forth in the complaint.  Defendants' infringement of plaintiffs' Marks is therefore deemed willful.  See Tiffany (NJ) v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003).  See also Fallaci v. New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983) (explaining that the court may infer willfulness from a defendant's failure to appear and defend an action in which the plaintiff alleges willful conduct).  The record sufficiently demonstrates that defendants used the GVC GENERAL VITAMIN CENTER mark in connection with its vitamins and health supplements sales and refused to cease doing so even

after it received cease and desist letters from plaintiffs' counsel. (Compl. ¶¶ 23, 24, 31; Ex. 6.) The evidence also establishes that defendants have refused to respond to any of plaintiffs' inquiries regarding this dispute. I am persuaded that defendants' violations were willful and thus constitute exceptional circumstances. Therefore, an award of reasonable attorney's fees is appropriate.[1]

In the Second Circuit, when calculating a "reasonable" fee award, the court must first establish a reasonable hourly rate, which is "the rate a paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 112 (2d Cir. 2007). "A district court's choice of rates is well within its discretion." Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 206 (E.D.N.Y. 2007) (internal quotations omitted); Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir. 1994). Reasonable hourly rates are determined by reference to fees in the community in which the action is pending and to the skill and experience of the attorneys who worked on the matter. Luciano v. Olsten Corp., 109 F.3d 111, 115–16 (2d Cir. 1997); Cho, 524 F. Supp. 2d at 206. The party seeking fees then bears the burden of establishing that the number of hours for which it seeks compensation is reasonable. Cruz, 34 F.3d at 1160 (citing Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)).

Plaintiffs have submitted contemporaneous time records[2] in support of their

---

[1] Plaintiffs also seek reasonable attorney's fees under New York General Business Law §§ 349 and 350. Since I find an award of attorney's fees appropriate under the Lanham Act, it is not necessary to consider the availability of fees under those sections.

[2] In the Second Circuit, applications for attorney's fees must be supported by contemporaneous time records specifying relevant dates, time spent, and work done. N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983); Broadcast

request for attorney's fees in the amount of $10,450.31, reflecting a total of 35.76 hours expended during the pendency of this action.[3] (See Declaration of Robert M. Tyler, Esq., dated Mar. 8, 2011 ("Tyler Decl."), annexed as Ex. H. to Pls. Mem.) Plaintiff was represented by attorneys from the Texas, Virginia and New York offices of the law firm of McGuire Woods LLP. The time records indicate that various individuals devoted time to plaintiffs' case, including, partner Marshall Beil, Esq. (2.30 hours at $650 per hour); partner Robert M. Tyler, Esq. (12 hours at $424 per hour); associate Jacob H. Rooksby, Esq. (3.20 hours at $275 per hour); associate William N. Federspiel, Esq. (15 hours at $176 per hour); paralegal Heather M. Enderle, (.30 hours at $165 per hour); and paralegal James J. Simonelli (4.9 hours at $165 per hour)[4].

Although plaintiffs' counsel has offices in Texas, Virginia and Manhattan (Tyler Decl. ¶ 11), this court is required to look to the hourly rates that are commonly charged for comparable work in this district. See Simmons v. New York City Transit Auth., 575 F.3d 170 (2d Cir. 2009) ("[W]hen faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule," which generally requires courts to use the hourly rates employed in the district in which the court sits).

---

Music, Inc. v. R. Bar of Manhattan, Inc., 919 F. Supp. 656, 661 (S.D.N.Y. 1996).

[3] For some attorney's fees, the firm applied a ten percent discount. However, plaintiffs do not explain and it is not clear how this discount was applied. I have therefore disregarded this discount. (See Pls.' Mem., Ex. H.)

[4] Plaintiffs provided the court with no explanation as to the titles of Heather M. Enderle and James J. Simonelli so the court treated them as paralegals in accordance with their hourly rates.

Under the framework established in Simmons, this court must presume that Eastern District rates apply to this case unless counsel can overcome the presumption. While plaintiffs' counsel's specialization in intellectual property litigation merits somewhat higher rates than normal for this district (see Pls.' Mem. Exs. F,G; Tyler Decl. ¶¶ 9, 10); see also Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc., 04-CV-2293, 2009 WL 5185808, at * 5 (E.D.N.Y. Dec. 23, 2009) ("because intellectual property matters such as this one require specialized knowledge, courts in this district have approved higher hourly rates than those generally awarded.") aff'd, 409 F. App'x 389 (2d Cir. 2010). I recommend that counsel be compensated at lower hourly rates than sought because those requested are unreasonable in light of recent case law in this district. Specifically, I recommend that the hourly rates for partners Marshall Beil, and Robert M. Tyler be reduced to $375, the rate for associate Jacob H. Rooksby and William N. Federspeil be reduced to $150, and the rate for paralegals Heather M. Enderle and James J. Simonelli be reduced to $100. See, e.g., Tu v. TAD Sys. Tech. Inc., 08-CV-3822 , 2009 WL 2905780, at * 8 (E.D.N.Y. Sept. 10, 2009) (awarding rates of $375 for partners, $250 for senior associates, and $150 for junior associates who had specialized in intellectual property matters); Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc., 04-CV-2293 SMG, 2009 WL 5185808 (E.D.N.Y. Dec. 23, 2009) aff'd, 409 F. App'x. 389 (2d Cir. 2010) (approving rates of $350-420 per hour for law firm partner with twenty-one years of experience in intellectual property law, $300-320 per hour for associate with six years experience in intellectual property law, and $85-90 per hour for paralegals.).

I next turn to the question of whether the hours expended by counsel were reasonable in an action of this nature. Having reviewed plaintiffs' submission thoroughly, I am

satisfied that the attorneys did not engage in duplicative or unnecessary work, and that they devoted a reasonable amount of time to each task for this type of case. See Mamiya Am. Corp. v. Huayi Bros., Inc., 09-CV-5501, 2011 WL 1322383, at * 11 (E.D.N.Y. Mar. 11, 2011) (awarding fees for 37.7 hours of work on default trademark infringement case), report and recommendation adopted. Accordingly, I respectfully recommend that the plaintiffs receive a total fee award of $8,612.50.

Plaintiff also requests $1,127.54 in costs. Courts generally award costs to prevailing parties in cases involving violations of the Lanham Act. See Tri-Star Pictures, Inc. v. Unger, 42 F. Supp. 2d 296, 306 (S.D.N.Y. 1999); 15 U.S.C. § 1117(a). Taxable costs under 28 U.S.C. § 1920 and Local Civ. R. 54.1(c) include the $350 filing fee for a federal action.

In addition to the $350 filing fee, plaintiffs seek $777.54 in costs: $693.58 for service of process[5], $7.98 is for photocopying, $50.63 for courier service, $23.75 for transportation, and $1.60 for long distance telephone charges. (Pls.' Mem., Ex. H.) These are reasonable out-of-pocket expenses that are customarily compensable. See, e.g., Kuzma v. I.R.S., 821 F.2d 930, 933-34 (2d Cir. 1987) ("Identifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are [compensable] . . . ."); Duke v. County of Nassau, No. 97-CV-1495, 2003 WL 23315463, at *6 (E.D.N.Y. Apr. 14, 2003) ("Courts have continuously recognized the right for reimbursement of costs such as photocopying, postage, [and] transportation[ ] . . . ."). I find these expenses reasonable and recommend that they be granted in full. In sum, I respectfully recommend that plaintiff be awarded $9,740.04 in fees and

---

[5] This includes four service of processes to Cheema and the Secretary of State. (Pls.' Mem., Ex. H.)

costs.

## CONCLUSION

For the reasons stated above, I respectfully recommend that plaintiff's request for a permanent injunction be granted and that plaintiff be awarded $9,740.04 in attorney's fees and costs. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Garaufis and to my chambers, within fourteen (14) days. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
August 18, 2011